# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00154-COA

**OCEAN BLUE LAND & TIMBER CO., LLC,**        **APPELLANTS**
**AND PATRICK TERRELL**

**v.**

**TATIA MARSOLAIS**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/15/2023 |
| TRIAL JUDGE: | HON. DAVID SHOEMAKE |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JEFFREY LOEWER HALL |
| ATTORNEY FOR APPELLEE: | PAUL MANION ANDERSON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 08/04/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS, McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Tatia Marsolais filed a complaint in the Chancery Court of Jefferson Davis County alleging that Robert Patrick Terrell ("Patrick"), through Ocean Blue Land & Timber Co. LLC ("Ocean Blue"), fraudulently obtained certain parcels of land and contractual interests from her while she was addicted to crack cocaine and financially unstable. Patrick subsequently conveyed the property to Tall Pines Timber LLC ("Tall Pines"). Tatia sought to set aside the conveyance and other related transactions concerning her interest in property held in a family trust. The chancellor granted summary judgment in Tatia's favor regarding her one-half interest in 640 acres of the family trust property ("the trust property"). Following a bench

trial on the remaining claims, the chancellor found that Patrick had committed fraud, and the court voided a conveyance involving 131 acres of other land Tatia owned, awarded punitive damages, and sua sponte pierced the corporate veils of the limited liability companies involved in the transactions. The court assessed punitive damages against Patrick and David Waits ("David"), the owner of Tall Pines, individually. On appeal, Ocean Blue and Patrick argue that the chancellor erred by finding that (1) the properties were acquired by fraud, (2) punitive damages were warranted and properly assessed, and (3) Ocean Blue's corporate veil should be pierced. After our review of record and the written and the oral arguments of counsel, we affirm the chancellor's finding of fraud, but we reverse the punitive damages award and render judgment that punitive damages against Patrick individually are not proper.

**FACTS AND PROCEDURAL HISTORY**

¶2.     Tatia is the only grandchild of Duthiel and Frenchie Fortenberry. Prior to their passing away, Duthiel and Frenchie accumulated substantial assets, including real property, timberland, and cattle in Jefferson Davis County. They conveyed 131 acres of land to Tatia in fee simple. They also gifted Tatia a one-half interest and gifted Tatia's mother, Frenchie Marsolais, the other one-half interest in the 640 acres of land held in a trust. By February 2010, both grandparents had passed away, Tatia was forty years old, and the trust remained in place. No evidence indicated that Tatia had requested a dissolution of the trust. Moreover, Tatia received monthly trust distributions of approximately $2,000.

¶3.     Between late 2009 and early 2010, Tatia became heavily addicted to crack cocaine. During that time, Tatia resided on the trust property in Jefferson Davis County with her

2

boyfriend, Michael Thornhill ("Toad"). Toad occasionally worked for Patrick, the owner and manager of Ocean Blue. Through Toad, Tatia became acquainted with Patrick. Tatia had an initial encounter with Patrick when he purchased her truck. She also testified that Patrick supplied drugs either directly to her and Toad or that Patrick gave them money to purchase the crack cocaine.

¶4.     In November 2010, a transaction occurred between Tatia and Patrick involving her 131 acres of land. The parties disputed the nature of the transaction during the litigation. Tatia maintained that she borrowed $25,000 from Patrick and intended to provide only a limited portion of her land, ten acres, as collateral for the loan. Patrick maintained that he outright purchased the entire 131 acres. The evidence further conflicted regarding the amount Patrick paid Tatia, ranging from $25,000 to $45,000. Evidence of the $25,000 figure was provided by a check and was the only amount that could be confirmed. Patrick explained in his testimony that the remaining $20,000 was provided to Tatia in cash and other assets.

¶5.     On November 16, 2010, Patrick and Tatia met at the chancery clerk's office in Jefferson Davis County. Tatia testified that she believed she had signed documents giving Patrick permission to survey ten acres of the land, which would have served as collateral for the $25,000 loan. Instead, the document executed that day was a warranty deed conveying the 131 acres of land to Ocean Blue. She further testified that Patrick concealed portions of the document with his hand, rushed her through the signing process, and did not allow her to review the document before signing, all while she was high on crack. Patrick, however,

maintained that the transaction was a legitimate sale.

¶6.     The evidence also showed that Patrick subsequently transferred the 131 acres in fee simple approximately one week after obtaining title, conveying it on November 23, 2010, to Tall Pines, which was owned by David, for approximately $60,000.  David alleged that he paid $111,000, but the only amount that could be traced was $60,000 written on a check.  Testimony established that Patrick and David had engaged in numerous prior land transactions over many years.

¶7.     The dispute expanded beyond the fee simple parcel containing 131 acres.  On March 10, 2011, a deed purporting to bear Tatia's signature conveyed her one-half interest in the trust property (640 acres) to Ocean Blue.  On June 24, 2011, a contract for the sale and purchase of real estate, related to the sale of trust property, was purportedly signed by Tatia.  The contract assigned her interest in the trust to Ocean Blue upon dissolution of the Trust, giving Ocean Blue the right to request final distribution.  Tatia challenged those transactions and asserted that all the documents related to the trust were invalid and/or forged and a product of fraud.

¶8.     Tatia filed her original complaint on March 30, 2011, and an amended complaint on July 22, 2011.  On November 11, 2011, Tatia filed a second amended complaint seeking to set aside the conveyances and other transactions involving both the 131-acre fee simple property and the trust property.  According to the briefs and the parties at oral argument, Tatia sued only the LLCs.  However, there was trial testimony from Tatia's original attorney that she sued both LLCs and the owners of the LLCs.  However, no copies of the complaint

4

or amended complaints appear in the record. It is undisputed that Tatia sued Ocean Blue and Tall Pines to set aside the allegedly fraudulent conveyances. Tatia was represented by attorney Andrew Foxworth, who had previously handled her grandmother's estate.

¶9. On September 26, 2016, Tatia filed a motion for partial summary judgment to set aside the March 10, 2011 deed concerning the trust property. On March 10, 2020, the court granted the motion and set aside the deed, finding it null and void.

¶10. The remaining issues concerning the validity of the 131-acre deed and the contract concerning Tatia's trust interest were litigated between June 2019 and December 2022. The case proceeded over three days of trial, with the fourth day being canceled and the parties opting only to submit evidence to the court.

*Testimony of Foxworth*

¶11. Foxworth testified that Tatia retained him after learning that she had signed a deed conveying her 131 acres to Patrick rather than securing a loan by a deed of trust. Foxworth testified that Tatia explained to him she believed the land served as collateral for the borrowed funds.[1] Prior to filing a lawsuit, Foxworth contacted Patrick, attempting to verify the amount owed on the loan and to pay it off. Patrick initially stated that Tatia owed him more than $25,000, but that he needed to "get with his business person." Subsequent communications from Patrick's attorney, Jake Ritchie, indicated that the land was purchased for $25,000 and paid in full. Ritchie also included a couple of checks written to Tatia, as well as some receipts. But when Foxworth reviewed those purported check payments, he

---

[1] During the litigation, Foxworth realized he would likely be a witness and that he needed to help Tatia obtain a new attorney. He represented Tatia until July 2011.

was unable to verify any payments other than the $25,000. Although the checks contained Tatia's purported endorsements, Tatia never received the money for the other checks. Further, Foxworth testified that he learned Patrick never had the money in his bank account to cover those other amounts listed on the checks, nor did the checks ever clear the bank. Foxworth testified that eventually he filed a lawsuit on behalf of Tatia against Patrick, David, and their respective companies.

¶12. Foxworth further testified that he was concerned about Tatia's capacity to convey any property and her vulnerability to manipulation. He described receiving letters purportedly from Tatia terminating his representation, only for Tatia to later deny sending the letters. On several occasions during this period, Tatia contacted him early in the morning, saying, "[Y]ou're going to get something in the mail from me that I was forced to sign, so throw it in the garbage." She would also ask him to continue representing her. Foxworth also testified that a copy of those letters and Tatia's checkbook were found in Patrick's personal files within his prison cell.[2] Patrick did not dispute this and confirmed that he had the letters to prepare for his deposition. Foxworth never sent Patrick a copy of those letters. Also, according to Foxworth, Tatia showed "erratic and disturbing" behavior, associated with her ongoing drug addiction.

*Testimony of Patrick*

¶13. Patrick also testified essentially to the facts as stated above. First, Patrick admitted there was no written contract for the 131-acre transaction. During the trial, Patrick presented

---

[2] Patrick was convicted of four felonies related to false pretense and real estate fraud and was serving a twenty-year sentence with the Mississippi Department of Corrections.

various endorsed checks to "prove" that he paid Tatia more than $100,000 for the property. However, except for the $25,000 check, none of the other checks Patrick presented had been cashed. Corporate depositions of Regions Bank and Citizens National Bank taken under Mississippi Rule of Civil Procedure 30(b)(6) were marked and received into evidence without objection.[3] Regions' deposition testimony confirmed that the checks were never cashed, and even if they were presented, Patrick did not have enough funds in his account to cover the amounts of $15,000, $37,000, and $50,000. Citizens Bank also confirmed that during the relevant time periods, Patrick lacked the funds in his account to cover check payments from his Citizens Bank account.

*Testimony of Tatia*

¶14. Finally, Tatia testified that she never intended to sell her family land. She explained that her grandfather gave her 131 acres of land when she was sixteen years old, with the understanding that the land would remain in the family. He told her that it was fine for her to sell timber but to never sell the land. Tatia maintained that she believed she was signing documents connected to a loan transaction and did not discover that she had signed a deed until approximately one year later. Tatia testified that she was surprised when she saw the land conveyance because it was only supposed to be her permission for a survey. She denied receiving the additional $20,000 in cash Patrick claimed to have paid her, and she disputed the total amount received from Patrick. Tatia stated that she never attempted to fire Foxworth as her attorney. Instead, Patrick typed and mailed the letters to Foxworth stating

---

[3] These banks did business with Ocean Blue, which was solely owned by Patrick.

that she had fired him. She also testified that she was heavily addicted to crack cocaine during 2010, that she often remained awake for "multiple days at a time," and that she was under the influence during the time surrounding the transactions.

¶15. Following trial, the chancery court issued its judgment in which it found that Patrick fraudulently obtained the properties at issue. The court voided the challenged transactions, awarded Tatia $300,000 in punitive damages, and sua sponte pierced the corporate veils of Ocean Blue and Tall Pines to award the punitive damages against Patrick and David, individually. Ocean Blue, Patrick, Tall Pines, and David filed post-trial motions, which the court denied. David died, and his estate and Tall Pines filed a notice of appeal, as did Patrick and Ocean Blue. During the pendency of the appeal, David's estate settled with Tatia and conveyed the 131 acres back to her. Tatia filed an unopposed motion to dismiss Tall Pines and David on August 6, 2025. On August 26, 2025, the Mississippi Supreme Court granted the motion and dismissed Tall Pines and David as parties to the appeal. On appeal, Ocean Blue and Patrick challenge the chancellor's findings that the properties were acquired by fraud, punitive damages were warranted and properly awarded, and Ocean Blue's corporate veil should be pierced.

## STANDARD OF REVIEW

¶16. "The award of punitive damages, along with the amount of such, are within the discretion of the trier of fact." *Woodkrest Custom Homes Inc. v. Cooper*, 108 So. 3d 460, 468 (¶33) (Miss. Ct. App. 2013) (quoting *Hurst v. SW Miss. Legal Servs. Corp.*, 708 So. 2d 1347, 1350 (Miss. 1998)). This Court has "shown great deference to [triers of fact] that have

awarded punitive damages." *Id.* (quoting *Am. Income Life Ins. Co. v. Hollins*, 830 So. 2d 1230, 1242 (¶44) (Miss. 2002), *overruled on other grounds by Mladineo v. Schmidt*, 52 So. 3d 1154, 1166 (¶46) (Miss. 2010)).

¶17.   We will not disturb a chancellor's findings of fact "unless the chancellor's decision is manifestly wrong or unsupported by substantial evidence." *Wells v. Wells*, 394 So. 3d 1011, 1018 (¶26) (Miss. Ct. App. 2024). "We always review a chancellor's findings of fact, but will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Allen v. Dickerson*, 385 So. 3d 1209, 1218 (¶35) (Miss. 2024) (internal quotation marks omitted). "Fraud is essentially a question of fact best left for the fact-finder." *In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d 829, 835 (¶9) (Miss. 2015).

¶18.   Accordingly, we review the chancery court's findings of fact and conclusions of law to determine whether the ruling was supported by substantial credible evidence. *Woodkrest Custom Homes Inc.*, 108 So. 3d at 468 (¶33). If the amount awarded was "arbitrary or unreasonable, against the overwhelming weight of the evidence," we must reverse and remand the award for further consideration. *Id.*

## DISCUSSION

¶19.   After thoroughly reviewing the record and hearing oral arguments, this Court has determined that the issue concerning the title ownership of the real property, i.e., the 131 acres and the 640 acres, was either correctly decided or resolved by settlement. First, the

9

chancellor granted summary judgment in favor of Tatia regarding the trust property after determining that the trust was the owner of the property, not Tatia. Therefore, the chancellor found Tatia lacked the authority to convey the trust property. We agree. *See* Miss. Code Ann. § 91-8-505.[4]

¶20. In addition, after the final order, Tatia and Tall Pines (i.e., David) and David's estate entered into a settlement agreement and mutual release on March 13, 2025, resolving their disputes regarding the 131 acres. The settlement agreement required Tall Pines to execute a quitclaim deed returning the 131 acres to Tatia. In return, Tatia dismissed her claims against Tall Pines and David.

I. **Whether Patrick committed fraud to obtain the title to the 131 acres and the trust property.**

¶21. The chancellor found that the contract supposedly signed and entered into between Tatia and Ocean Blue on June 24, 2011, for the sale of her one-half interest in the trust property was obtained as a result of fraud. In addition, the chancellor found that Patrick fraudulently obtained the deed to Tatia's 131 acres and therefore set aside that deed. The chancellor further found and ordered that "as a direct result of [Patrick's] fraud, the deed to the property which Patrick Terrell sold to David Waits is held to be void and is, likewise, hereby set aside." The chancellor ordered the Chancery Clerk of Jefferson Davis County to "amend the deed books to reflect this order and return full title to the property to Tatia Marsolais immediately." Patrick challenges these findings of fraud.

---

[4] Pursuant to Mississippi Code Annotated section 91-8-505(a)(1) (Rev. 2020), the rights of beneficiaries to a trust do not rise to the level of a property interest and, under section 91-8-505(a)(4), may not be transferred.

¶22. Under Mississippi law, to prove fraud, a party must show by clear and convincing evidence (1) a representation (2) that is false (3) and material, (4) which the speaker knew was false or was ignorant of the truth, (5) the speaker's intent that the listener act on the representation in the manner reasonably contemplated, (6) the listener's ignorance of the statement's falsity, (7) the listener's reliance on the statement as true, (8) the listener's right to rely on the statement, and (9) the listener's proximate injury as a consequence. *Gray v. Caldwell*, 904 So. 2d 212, 215 (¶12) (Miss. Ct. App. 2005) (citing *In re Est. of Law*, 869 So. 2d 1027 (¶4) (Miss. 2004)).

¶23. Here, the record supports the chancellor's findings of fraud. Tatia testified that Patrick concealed portions of the 131-acre deed and misrepresented it as permission for a land survey. Various parties throughout the record admitted that Tatia was addicted to crack cocaine. Tatia testified that Patrick supplied her with drugs, creating a relationship that made her vulnerable to Patrick's alleged schemes, manipulations, and lies. Patrick's influence over Tatia was shown by his admission that he had Tatia's checkbook. Patrick's business partner, David, admitted that he was aware of Patrick's reputation in the community as a drug dealer. The evidence also showed that Patrick had years of experience in the land and timber business, to the extent that he prepared his own deeds. Tatia, on the other hand, who had no experience in land transactions, reasonably relied upon Patrick's representations that she was only signing a document to survey ten acres out of the tract to secure a $25,000 loan. Patrick and David admitted that on previous occasions they were sued over land deals that involved Patrick defrauding vulnerable landowners, including his own sister. Despite claiming to be

11

experienced, legitimate business owners, Patrick maintained little to no documentation of his transactions with Tatia, including receipts, payment records, or any reliable evidence of a land purchase.

¶24. Further, although Patrick provided checks to the court that he alleged to be proof of his payments to Tatia, the banks confirmed that the checks were never cashed and even if they were presented, Patrick did not have enough funds in his account to cover them.

¶25. Additionally, testimony from Tatia's first attorney, Foxworth, further supports the chancellor's findings of fraud. Foxworth testified that Tatia retained him after she learned that she had signed a deed conveying her fee simple interest in the 131 acres to Patrick. According to Foxworth, the circumstances surrounding Tatia's behavior and the land transaction were so troubling that he withdrew as her attorney in order to testify as a witness on her behalf. Foxworth explained that he was mailed several letters from someone purporting to be Tatia attempting to terminate his representation; however, Tatia would follow up with a call telling him to destroy the letters because she did not send them. The record reflects, and Patrick also admitted, that copies of those letters were found in Patrick's personal folders within his prison cell. But Foxworth had never provided Patrick with a copy of those letters. Thus, the implication was that Patrick, not Tatia, wrote the letters. Additionally, Foxworth stated that even Patrick's attorney provided him two conflicting amounts paid for the land.

¶26. The chancellor found that Tatia's testimony was credible and convincing and that even upon cross-examination, her testimony remained "unshaken." However, the court

12

found that Patrick and David, "despite having ten years to prepare for trial, could not provide testimony that was credible." The record reflects that Patrick and David provided conflicting testimony. We defer to the chancellor, who was in a far better position to determine the credibility of witnesses, and find no reversible error. *Diaz v. Dep't of Hum. Servs.*, 283 So. 3d 265, 268 (¶¶12-13) (Miss. Ct. App. 2019).

¶27. Based on the record, we affirm the chancellor's finding that the land transaction arose from "fraudulent means." "We will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Allen*, 385 So. 3d at 1218 (¶35) (internal quotation marks omitted). This Court does not substitute its judgment for that of the chancellor, who had the opportunity during trial to view Ocean Blue's and Tall Pines' conduct holistically. *Knights Marine & Indus. Servs. Inc. v. Gulfstream Enters. Inc.*, 216 So. 3d 1164, 1171-72 (¶25) (Miss. Ct. App. 2017) ("[I]n determining whether punitive damages are appropriate, the judge decides whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard."). Accordingly, we affirm the chancellor's finding of fraud.

## II. Whether the chancellor erred in sua sponte piercing the corporate veil and awarding punitive damages against the owners of the LLCs.

¶28. Patrick asserts that the chancery court erred in piercing the corporate veil of Ocean Blue and awarding punitive damages against him personally. The parties agree that Patrick

13

and David were not sued individually. Patrick further contends that Tatia did not plead or prove what is required to pierce the corporate veil.

¶29. Due process rights protect individuals who have not been made parties to the litigation from having a court enter a judgment against them. We have held that if a plaintiff does not sue a third party in addition to a defendant, any responsibility that the third party may have could not result in a judgment requiring payment by the third party. *Brookhaven Funeral Home Inc. v. Hill*, 820 So. 2d 3, 5 (¶8) (Miss. Ct. App. 2002). In that case, Hill fell and was injured while walking from a funeral home down a sidewalk toward the street. *Id*. at 4 (¶2). Although the sidewalk was owned by the City of Brookhaven, *id*. at (¶4), Hill sued only the funeral home. *Id*. at (¶6). In discussing who may be liable for damages, we stated, "[S]ince Hill did not herself sue the City, any responsibility that the City might have had to Hill could not have resulted in a judgment requiring a payment from the City to Hill." *Id*. at (¶8) (citing *Est. of Hunter v. Gen. Motors Corp.*, 729 So. 2d 1264, 1275-76 (Miss. 1999)). In *Mabry v. Howington*, 569 So. 2d 1165, 1166-67 (Miss. 1990), the Mississippi Supreme Court vacated a judgment against a wife when only her husband was sued in a boundary dispute over their homestead. The Court held, "As to her, the judgment was wholly void and without effect." *Id*. In a case involving damages assessed against the owner of a company, *Nash Plumbing Inc. v. Shasco Wholesale Supply Inc.*, 875 So. 2d 1077, 1082 (¶16) (Miss. 2004), the Supreme Court reversed a judgment against an individual owner when the plaintiff "failed to make sufficiently particularized allegations demonstrating the applicability of the veil piercing doctrine to the facts of the case" and "failed to plead that the court should pierce the

14

corporate veil of either corporation." In the case at hand, Patrick was not sued individually; thus, the circuit court erred in assessing punitive damages against him.

## CONCLUSION

¶30.    In this case, the title to the 131 acres at issue was restored to Tatia by settlement with David, and the chancery court correctly determined she had no authority to convey her interest in the trust property. We affirm the chancery court's ruling that Patrick obtained the property by fraud. However, because Patrick was not sued individually, the chancery court erred in assessing punitive damages against him. Accordingly, we reverse and render the punitive damages award.

¶31.    **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**